UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

WILLIAM JOESPH HART,

                Plaintiff,

v.                                                    CASE # 19-cv-00042

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
───────────────────────────────────────────────

APPEARANCES:                                      OF COUNSEL:

FREDERICK LAW OFFICES, PLLC            SARAH A. FREDERICK, ESQ.
  Counsel for Plaintiff
50 Fountain Plaza
Suite 1400
Buffalo, NY 14202

U.S. SOCIAL SECURITY ADMIN.              OONA MARIE PETERSON, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   JOANNE JACKSON
  Counsel for Defendant                          PENGELLY, ESQ.
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **DENIED**, defendant's motion is **GRANTED**.

## I.	RELEVANT BACKGROUND

### A.	Factual Background

Plaintiff was born on August 11, 1952 and has a high school education. (Tr. 139, 167). Generally, plaintiff's alleged disability consists of drop foot, imbalance, weakness in left leg, back problems, diabetes and high blood pressure. (Tr. 166). His alleged onset date of disability is April 22, 2015. (Tr. 162). His date last insured is June 30, 2018. (Tr. 162).

### B.	Procedural History

On July 20, 2015, plaintiff applied for a period of Disability Insurance Benefits (SSD) under Title II of the Social Security Act. (Tr. 139-142). Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge (ALJ). On October 26, 2017, plaintiff appeared before the ALJ, Stephen Cordovani. (Tr. 21-53). On December 27, 2017, ALJ Cordovani issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 7-16). On November 5, 2018, the Appeals Council (AC) denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Thereafter, plaintiff timely sought judicial review in this Court.

### C.	The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2018.

2. The claimant has not engaged in substantial gainful activity since April 22, 2015, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine status post L5-S1 lamino-foraminotomy and microdiscetomy (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can occasionally climb stairs and ramps, can frequently kneel, bend, stoop and squat, can occasionally crouch and crawl, can occasionally climb ropes, ladders and scaffolds, can frequently reach and can occasionally operate left foot controls.

6. The claimant is capable of performing past relevant work as a Chief Custodial Engineer and a Stationary Engineer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 22, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 7-16).

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes three arguments in support of his motion for judgment on the pleadings. First, plaintiff argues the ALJ's step 3 determination contained errors of law and plaintiff's impairments satisfy the criteria of Listing 1.04A. (Dkt. No 10 at 21). Second, plaintiff argues the ALJ committed reversible error by failing to support his RFC determination with substantial evidence. (Dkt. No. 10 at 23). Specifically, he argues the ALJ erred in the evaluation of opinion evidence. (Dkt. No. 10 at 25). Lastly, Plaintiff argues the ALJ's step 4 determination contained errors of law. (Dkt. No. 10 at 27). Plaintiff also filed a reply in which he reiterated his original arguments. (Dkt. No. 13).

### B.     Defendant's Arguments

In response, defendant makes three arguments. (Dkt. No. 12). First, defendant argues the ALJ properly determined that plaintiff did not meet Listing 1.04A. (Dkt. No. 12 at 5). Second, the RFC is supported by substantial evidence and opinion evidence was appropriately weighed. (Dkt.

3

No 12 at 12). Lastly, defendant argues the ALJ properly found plaintiff is capable of performing his past relevant work. (Dkt. No 12 at 16).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

    **B.**    **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.**    **ANALYSIS**

    **A.  Listing § 1.04A**

If an ALJ determines a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii)(d),

416.920(a)(4)(iii)(d)[1]. The impairments listed in Appendix 1 are considered severe enough to prevent a plaintiff from doing any gainful activity. *Id.* §§404.1525(a), 416.925(a). If a plaintiff's impairment, or combination of impairments, matches one listed in Appendix 1, and satisfies the duration requirement, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience. *Id.* §§ 404.1520(d), 416.920(d).

To match an impairment listed in Appendix 1, a plaintiff's impairment "must meet all of the specified medical criteria" of a listing. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1). It is the plaintiff's burden to "demonstrate that [his] disability [meets] all of the specified medical criteria of [a Listing]." *Otts v. Comm'r of Soc. Sec.,* 249 F. App'x. 887, 888 (2d Cir. 2007) (internal citations omitted). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley,* 493 U.S. at 530, 110 S.Ct. 885.

Here, at step three, the ALJ concluded plaintiff's spinal impairment did not meet or equal § 1.04A for disorders of the spine, defined in relevant part as follows:

> 1.04 Disorders of the Spine (e.g., ... spinal arachnoiditis, spinal stenosis, ... degenerative disc disease ...) resulting in compromise of a nerve root (including the cauda equina) or spinal cord. With: (1) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine) ...

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

In his step three analysis, the ALJ stated plaintiff did not meet the requirements of listing 1.04A because "all of the elements required are not present nor does the claimant evidence spinal arachnoiditis or pseudoclaudication." (Tr. 13). Although his rationale is brief, an ALJ's step three

---

[1] Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier Regulations and SSRs.

determination may be upheld even in the "absence of an express rationale … [where] portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence." *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982); *accord Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-113 (2d Cir. 2010); *see Solis v. Berryhill*, 692 F. App'x 46, 48 (2d Cir. 2017) ("Although the ALJ did not explicitly discuss Listing 11.14, his general conclusion (that Solis did not meet a listed impairment) is supported by substantial evidence."). "But where the evidence on the issue of whether a claimant meets or equals the listing requirements is equipoise and 'credibility determinations and inference drawing is required of the ALJ' to form his conclusion at step [three], the ALJ must explain his reasoning." *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507-508 (S.D.N.Y. 2014) (citing *Berry,* 675 F.2d at 469); *see also Norman v. Astrue,* 912 F.Supp.2d 33, 81 (S.D.N.Y. 2012).

Plaintiff asserts the ALJ's evaluation, and ultimate findings in his step three discussion, were conclusory, based on an incorrect legal standard, and unsupported by substantial evidence. (Dkt. No. 9 at 20). However, the evidence does not support plaintiff's assertion. In arguing the back impairment meets the listing, plaintiff relies on an MRI which predates not only the alleged onset date but also the surgery to remedy the impairment. (Tr. 313, 280-88). There is no evidence of nerve root compression during the relevant time period. Rather, the ALJ noted that plaintiff expressed to various providers that his pain was reduced and he felt stronger after his surgery. (Tr. 14).

Looking to the other criteria under listing 1.04A, the record fails to support the other requirements. Although plaintiff is able to cite to some records that meet certain prongs of the listing, he has ignored others that are contrary. For example, plaintiff points to a follow-up examination performed by Dr. James L. Budny, two and a half weeks after surgery, to show that

he had a decreased range of lumbar motion. (Dkt. No. 10 at 21, referring to Tr. 323). Aside from the fact that he was still healing from surgery, in this same examination Plaintiff communicated that the majority of his pain was gone and other than some tightness in his leg, he was pain free. Tr. 323. Further, upon examination Dr. Budny found Plaintiff to have negative straight leg raising. Id. Evidence of neuro-anatomic distribution of pain and positive straight leg raise are required to satisfy paragraph A of Listing 1.04. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04. Here, Plaintiff did not satisfy either of these criteria. In some cases, the plaintiff cites evidence of satisfying various prongs which again predate the alleged onset date and surgery. For example, plaintiff cites to a December 2014 neurosurgical medical evaluation and postoperative follow-up records within a month after back surgery as evidence of listing criteria. (Dkt. No. 10 at 22).

Later in his decision, the ALJ referenced findings that were not consistent with the listing. For example, when addressing the opinion of consultative examiner Dr. John Schwab, ALJ Cordovani referenced exam findings that plaintiff had full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally in the lumbar spine as well as a negative straight leg raise, no sensory deficit, and full strength (5/5) in the upper and lower extremities indicate that the requirements of listing 1.04A were not met. (Tr. 15, 359; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04A). The ALJ also noted the plaintiff reported being able to cook, clean, shop, do laundry, golf, attend football games and attend church. (Tr. 14-15). Therefore, substantial evidence in the record, as outlined by the ALJ in his written decision and summarized herein, supported his conclusion that plaintiff's spinal impairments did not meet or equal listing 1.04A.

Therefore, although evidence in the record indicated plaintiff's spinal impairment met some criteria of listing 1.04A, plaintiff must prove his impairment meets all of the criteria during the period at issue. Although the ALJ did not specifically discuss all the medical findings in his

step three determination and overall discussion of the listing was brief, the ALJ's reasoning for finding plaintiff's spinal impairments did not meet or equal the listing were clear from the remainder of the decision. *See Otts,* 249 F. App'x at 889 ("While the ALJ might have been more specific in detailing the reasons for concluding that Otts's condition did not satisfy a listed impairment, the referenced medical evidence, together with the lack of compelling contradictory evidence from the plaintiff, permits us to affirm this part of the challenged judgment."). In his step four analysis, the ALJ thoroughly discussed the opinion of the consultative examiner as well as follow-up treatment notes from plaintiff's surgeon.

**B. RFC Determination**

The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. Id. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c), 416.927(c), 416.945(a)(3), 416.946(c). Plaintiff argues the RFC for a limited range of medium work is not supported by substantial evidence, including opinion evidence and functional capacity testing. (Dkt. No. 10 at 23). Plaintiff asserts the ALJ failed to explain the finding of the ability to lift up to 50 pounds occasionally in his decision or cite evidence contradicting opinion evidence in the record. (*Id.*). However, plaintiff later states the ALJ did cite activities that were opined to be inconsistent with disability, but they were not definitive about the ability to lift 50 pounds occasionally and 25 pounds frequently. (Dkt. No. 10 at 25).

Contrary to plaintiff's assertion, the ALJ supported his RFC determination with evidence of record and set forth his decision in a manner clear enough to facilitate review of his findings as to plaintiff's limitations. Here, the RFC finding is supported by the opinion of the consultative

examiner Dr. Schwab and by the treating records of plaintiff's primary care physician, Dr. Sy. Dr. Schwab examined plaintiff in September 2015, and found plaintiff to have full strength in the upper and lower extremities, full range of motion of his musculoskeletal system, no sensory deficits, full grip strength in his hands, and stable and nontender joints. (Tr. 359). Dr. Schwab also noted degenerative changes in the lumbosacral spine based on the results of an x-ray, but opined that plaintiff had no restrictions based on the findings of his examination. (Tr. 359-61). The ALJ afforded Dr. Schwab's opinion great weight because it was based on a personal examination of plaintiff, with clear findings and issued by a physician with programmatic expertise. (Tr. 15). The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* 667 F. App'x 319 (2d Cir. 2016). The ALJ however properly explained the history of back surgeries supported at least some modest limitations in plaintiff's work capabilities, thus finding an RFC for medium work. (Tr. 15); *See also McLeod v. Berryhill,* Case No. 1:17-CV-00262, 2018 WL 4327814, at *3 (W.D.N.Y. Sept. 11, 2018) (consultative examiner's opinion supported RFC finding, noting that "'the fact that the ALJ's RFC assessment did not perfectly match [an examining medical source]'s opinion, and was in fact more restrictive than that opinion, is not grounds for remand.'") (quoting *Castle v. Colvin*, No. 1:15-CV-00113(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017)).

  The ALJ also discussed records from Dr. Sy in support of the RFC. (Tr. 15). On January 21, 2016, plaintiff presented to Dr. Sy for a physical examination, stating that he had intermittent low back pain, for which he took Tramadol "sparingly." (Tr. 440). Dr. Sy's examination revealed:

10

>Spinal contours were normal, there was no tenderness or spasm of the spine, and overall plaintiff had full strength and full range of motion. Plaintiff could heel toe walk, was fully alert and oriented, and had intact sensation and "no incoordination" was present. (Tr. 440).

Dr. Sy diagnosed plaintiff with radiculopathy of the lumbosacral region and stated plaintiff's percentage of temporary impairment was zero percent. (Tr. 441). Similarly unremarkable findings were noted by Dr. Sy at subsequent appointments. For example, on June 20, 2016, Dr. Sy noted plaintiff appeared healthy, well, developed, and walked with normal gait with denials of stiffness or swelling. (Tr. 442-444). Dr. Sy had also recommended regular exercise for at least 150 minutes a week. (Tr. 444).

### 1. Opinion Evidence

Plaintiff relies heavily on the opinion of neurosurgeon Dr. Budny in arguing the RFC is not supported by substantial evidence. (Dkt. No. 10 at 27). Dr. Budny performed plaintiff's discectomy in April 2015 and in July 2015 he stated plaintiff was 100% temporarily impaired. (Tr. 327). The ALJ directly addressed this opinion according it great weight "as a reflection of the acute limitations associated with that surgery but lesser weight in assessing disability on a long-term basis." (Tr. 15). ALJ Cordovani also noted that Dr. Budny's other opinions which were not contemporaneous with the surgery, rating the patient partially disabled, were accorded some weight but observing they were not based on Social Security standards or regulations. (*Id*.). Indeed, the ultimate finding of whether Plaintiff was disabled and cannot work is "reserved to the Commissioner" and a physician's statement that the claimant is disabled is not determinative. 20 C.F.R. § 404.1527(d); *Pintagro v. Colvin*, 1:15-CV-00478(MAT), 2017 WL 6616377, at *2 (W.D.N.Y. Dec. 27, 2017) ("An opinion that a claimant is totally or partially 'disabled' or is under a 'disability', even from an acceptable medical source such as a treating physician, is not entitled to any particular weight").

As noted above, Dr. Budny's replacement after retirement, Dr. Sy, did not opine any restrictions but rather drastic improvements as plaintiff recovered from surgery. (Tr. 440-445). The ALJ acknowledged the treatment notes and opinions of Dr. Sy and gave them great weight as they were consistent with the treatment records and plaintiff's daily activities. (Tr. 15, *referring to* 336-349, 432-454). Plaintiff's argument that the activities noted by the ALJ, such as mowing, doing home repairs and golfing, do not show the ability to perform medium work is not persuasive. An ALJ may consider plaintiff's activities of daily living in combination with the unremarkable examination results after surgery. The ALJ had also noted Dr. Sy's treatment notes and findings were consistent with the opinion from consultative examiner Dr. Schwab. (Tr. 15).

The record also contained a functional capacity evaluation (FCE) that was completed by an occupational therapist, Mr. Higgins, and adopted by a Worker's Compensation examiner Dr. Bagnall. (Tr. 631-634). The ALJ appropriately gave these opinions some weight, but not great weight in accordance with the regulations for analyzing medical opinions. (Tr. 15). The ALJ stated "the evaluation was for the purposes of Worker's Compensation determinations, was not performed by an acceptable medical source, and is not as consistent with the treatment records as other opinions." (*Id*.). Despite's plaintiff's argument, the ALJ is not required to mechanically review every factor so long as the Commissioner's adherence to the regulations is clear. *See Crowell v. Comm'r of Soc. Sec.*, 705 F. App'x 34, 35 (2d Cir. 2017); *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013). The ALJ's statement shows consideration of the treatment relationship and implicate factors of supportability and consistency. *See* 20 C.F.R. § 404.1527(c)(1-4) (considering the examining and treatment relationship and the fact that the more medical source opinion evidence is supported by, and consistent with, the evidence of record, the more weight is given the opinion). Specifically, the ALJ looked to the treatment records of Dr. Sy

(*see* Tr. 15), who had a longitudinal relationship with Plaintiff, examined him frequently, and, as explained above, did not find that plaintiff had any physical limitations. (Tr. 440, 442-45).

Plaintiff's argument that Mr. Higgins' opinion was not addressed is a misstatement. The ALJ directly refers to the FCE in his decision and gives it some weight while properly addressing the fact Mr. Higgins is not an acceptable medical source. 20 C.F.R. 404.1527(f). The ALJ also appropriately found that the opinion was internally inconsistent. *See* 20 C.F.R. § 404.1527(c)(4), (5) (the more consistent with, and supported by, the record as a whole, the more weight will be afforded). Mr. Higgins found that plaintiff was limited to light work despite also opining that plaintiff was capable of lifting and carrying 10 pounds frequently and up to 35 pounds and pushing 110 pounds occasionally, which would indicate that at least medium work (defined on the form as exerting 20-50 pounds of force occasionally and 10-25 frequently) could be done. (Tr. 633-34). Plaintiff argues simultaneously that the inconsistency is due to the form and standards used by Worker's Compensation but also that the form should be given greater weight because it defined exertional categories consistently with the Administration's definitions. (Dkt. No. 10 at 27; Dkt. No. 13 at 7). The ALJ appropriately evaluated Mr. Higgins' statement by highlighting the treatment relationship and both internal and external inconsistencies. As such, the ALJ appropriately evaluated Mr. Higgins' opinion and provided a reasonable explanation for affording the opinion some weight. *See Crowell*, 705 F. App'x at 35 (The Commissioner is not required to mechanically review every factor so long as the Commissioner's adherence to the regulations is clear).

   2. **Hypothetical to VE**

At step four of the five step sequential evaluation process for determining whether an individual is disabled, the ALJ must determine whether the claimant has the RFC to perform the

requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f). The term past relevant work ("PRW") is defined as "work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it. 20 CFR §§ 404.1560(b)(1), 416.960(b)(1). A plaintiff will be found not disabled if it is determined he has the RFC to perform: "1. The actual functional demands and job duties of a particular past relevant job; or 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61.

It is well established that a claimant has the burden to show he is unable to return to his previous specific job and an inability to perform his past relevant work generally. *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003). Here, Plaintiff completed a Vocational Report (Tr. 179-182), and identified his past relevant work as a chief custodial engineer and described his duties in detail. (Tr. 180). A properly completed SSA-3369-F6, Vocational Report, may be sufficient to furnish information about past work. SSR 82-61, 1982 WL 31387. Additionally, plaintiff testified before the ALJ and vocational expert ("VE") about his past relevant work and his job duties. (Tr. 32-33). "The claimant is the primary source for vocational documentation, and statements made by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." *Abbott v. Colvin*, 596 F. App'x 21, 23-24 (2d Cir. 2015) (summary order) (citing SSR 82-62, 1982 WL 31386, at *3). Notably, plaintiff argues there is inadequate documentation and evidence about his past relevant work, however he was represented by counsel who chose not to ask questions of the vocational expert at the hearing. (Tr. 52).

An ALJ may rely on a VE's testimony regarding a hypothetical as long as "there is substantial record evidence to support the assumption[s] upon which the vocational expert based

his opinion," *see Dumas v. Schweiker,* 712 F.2d 1545, 1553-154 (2d Cir.1983), and accurately reflect the limitations and capabilities of the claimant involved, *see Aubeuf v. Schweiker,* 649 F.2d 107, 114 (2d Cir.1981). *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). In this case, the VE testified a hypothetical claimant the same age, and with the same education, work experience, and RFC as Plaintiff could perform plaintiff's past relevant work. (Tr. 49-50). As thoroughly discussed above, the RFC was supported by substantial evidence and therefore the ALJ was permitted to rely on the VE's testimony indicating plaintiff can perform his past relevant work.

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**.

Dated: May 18, 2020  *J. Gregory Wehrman*
Rochester, New York  HON. J. Gregory Wehrman
United States Magistrate Judge